No. 25-20204

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

DOCTOR SCOTT SULLIVAN; DOCTOR FRANK DELLACROCE

*Plaintiffs - Appellees*

v.

STEWART A. FELDMAN; MARLA B. MATZ; FELDMAN LAW FIRM, L.L.P.;
CAPSTONE ASSOCIATED SERVICES (WYOMING), L.P.; A.M.Y. PROPERTY &
CASUALTY INSURANCE CORPORATION, ET. AL.

*Defendants - Appellants*

---

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:24-CV-3638
Hon. Lee H. Rosenthal

---

**JOINT BRIEF OF APPELLANTS**

---

E. John Gorman
Joseph F. Greenberg
THE FELDMAN LAW FIRM LLP
510 Bering Dr., Suite 500
Houston, TX 77057-1457
(713) 850-0700
(713) 850-8530 (Facsimile)
jgorman@feldlaw.com

Raffi Melkonian
A. Rose Doda
WRIGHT CLOSE BARGER & GUZMAN, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Facsimile)
melkonian@wrightclosebarger.com

jgreenberg@feldlaw.com

Jeff Joyce
JOYCE LAW FIRM, P.L.L.C.
802 Country Lane
Houston, TX 77024
(713) 222-1113
(713) 899-2397 (Facsimile)
Jjoyce@JoyceLawTx.com

doda@wrightclosebarger.com

Kevin Pennell
kevin@pennellfirm.com
PENNELL LAW FIRM PLLC
19 Briar Hollow Ln., Suite 110
Houston, TX 77027
(713) 965-7568
(713) 583-9455 (Facsimile)

***Counsel for Defendants-Appellants as specified in the Certificate of Interested Parties***

No. 25-20204

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

DOCTOR SCOTT SULLIVAN; DOCTOR FRANK DELLACROCE

*Plaintiffs - Appellees*

v.

STEWART A. FELDMAN; MARLA B. MATZ; FELDMAN LAW FIRM, L.L.P.;
CAPSTONE ASSOCIATED SERVICES (WYOMING), L.P.; A.M.Y. PROPERTY &
CASUALTY INSURANCE CORPORATION, ET. AL.

*Defendants - Appellants*

---

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:24-CV-3638
Hon. Lee H. Rosenthal

---

**CERTIFICATE OF INTERESTED PARTIES**

---

The undersigned counsel of record certifies that the following listed

persons and entities as described in the fourth sentence of Rule 28.2.1

have an interest in the outcome of this case. These representations are

made in order that the judges of this court may evaluate possible disqualification or recusal.

## *Defendants-Appellants*

Stewart A. Feldman
The Feldman Law Firm LLP
Capstone Associated Services, Ltd.
Capstone Associated Services (Wyoming), Limited Partnership[1]
Capstone Insurance Management (Anguilla), Ltd.
Stewart A. Feldman as trustee of the 1998 Irrevocable Family Trust
Stewart A. Feldman as trustee of the Benjamin and Sylvia Feldman Grandchildren's Trust
Marla B. Matz
Capstone Associated Services (Wyoming), LLC[2]
A.M.Y. Property & Casualty Insurance Corp.[3]
A.M.Y. Operating Co., LLC
MNS Investments, Limited Partnership
MNS Management Corp.
RSL Funding, LLC
RSL-3B-IL, Limited Partnership
RSL Special-IV, Limited Partnership
RSL-5B-IL, Limited Partnership
POC Lease Holdings, LLC
Extended Holdings, Limited Partnership
RSL 2012-1, LP
RSL-3B-IL Management, LLC
Chestnut Holdings, LLC

---

[1]  The complaint incorrectly names Capstone Associated (Wyoming), Limited Partnership and Capstone Holdings (Wyoming), Limited Partnership, neither of which exists, instead of the correct defendant Capstone Associated Services (Wyoming), LLC. *Compare* ROA.16, *with* ROA.272.

[2]  The complaint incorrectly names Capstone Holdings (Wyoming), LLC, which does not exist, instead of the correct defendant Capstone Associated Services (Wyoming), LLC.

[3]  The complaint incorrectly names A.M.Y. Property & Casualty Corp., which does not exist, instead of the correct defendant A.M.Y. Property & Casualty Insurance Corp. *Compare* ROA.17, *with* ROA.272.

iv

Mesquite Holdings, LLC
Property Express Funding, Ltd.
PEF Management Corp.
RSL 2012-1 Management LLC
RSL-5B-IL Management, LLC
Extended Management, LLC
RSL Special Management Corp.[4]
2075 Vermont Associates, LLC
Beringhouse Holdings, LLC
Capstone Holdings, LLC

***Counsel for Defendants-Appellants***

Raffi Melkonian
A. Rose Doda
WRIGHT CLOSE & BARGER, LLP
(now WRIGHT CLOSE & BARGER & GUZMAN LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Facsimile)
melkonian@wrightclosebarger.com
doda@wrightclosebarger.com

Jeff Joyce
JOYCE LAW FIRM, P.L.L.C.
802 Country Lane
Houston, TX 77024
(713) 222-1113
(713) 899-2397 (Facsimile)
Jjoyce@JoyceLawTx.com

(*Counsel for Stewart A. Feldman, The Feldman Law Firm LLP, Stewart A. Feldman as trustee of the 1998 Irrevocable Family Trust, Stewart A.*

---

[4] The complaint incorrectly names RSL Special-IV Management Corp., which does not exist, instead of the correct defendant RSL Special Management Corp. *Compare* ROA.20, *with* ROA.272.

v

*Feldman as trustee of the Benjamin and Sylvia Feldman Grandchildren's Trust, and Beringhouse Holdings, LLC)*

E. John Gorman
Joseph F. Greenberg
THE FELDMAN LAW FIRM LLP
510 Bering Dr., Suite 500
Houston, TX 77057-1457
(713) 850-0700
(713) 850-8530 (Facsimile)
jgorman@feldlaw.com
jgreenberg@feldlaw.com

*(Counsel for Stewart A. Feldman, The Feldman Law Firm LLP)*

Kevin R. Pennell
PENNELL LAW FIRM PLLC
19 Briar Hollow Lane
Suite 110
Houston, TX 77027
(713) 965-7568
(713) 583-9455 (fax)
kevin@pennellfirm.com

*(Counsel for Marla B. Matz, Capstone Associated Services, Ltd., Capstone Associated Services (Wyoming), Limited Partnership (incorrectly named as Capstone Associated (Wyoming), Limited Partnership and Capstone Holdings (Wyoming), Limited Partnership), Capstone Insurance Management, Ltd., Capstone Associated Services (Wyoming), LLC (incorrectly named as Capstone Holdings (Wyoming), LLC) A.M.Y. Property & Casualty Insurance Corp. (incorrectly named as A.M.Y. Property & Casualty Corp.), A.M.Y. Operating Co., LLC, MNS Investments, Limited Partnership, MNS Management Corp., RSL Funding, LLC, RSL-3B-IL, Limited Partnership, RSL Special-IV, Limited Partnership, RSL-5B-IL, Limited Partnership, POC Lease Holdings, LLC, Extended Holdings, Limited Partnership, RSL 2012-1, LP, RSL-3B-IL Management, LLC, Chestnut Holdings, LLC, Mesquite Holdings, LLC, Property Express Funding, Ltd., PEF Management Corp.,*

*RSL 2012-1 Management LLC, RSL-5B-IL Management, LLC, Extended Management, LLC, RSL Special Management Corp. (incorrectly named as RSL Special-IV Management Corp.), 2075 Vermont Associates, LLC, and Capstone Holdings, LLC)*

### Plaintiffs-Appellees

Scott Sullivan
Frank DellaCroce

### Counsel for Plaintiffs-Appellees

James M. Garner
Thomas J. Madigan
Jeffrey D. Kessler
David A. Freedman
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, LLC
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

/s/ Raffi Melkonian
*Attorney of record for Defendants-Appellants*

vii

## STATEMENT REGARDING ORAL ARGUMENT

This case should be argued because it involves an important dispute about the interpretation of a delegation clause of a complex arbitration agreement that has, on other grounds, already been the subject of a published decision of this Court. This case too presents important issues of arbitration law that are appropriate for oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................... iii

STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

JURISDICTIONAL STATEMENT ....................................................... ix

INTRODUCTION ................................................................................. 1

STATEMENT OF THE ISSUES ........................................................... 4

STATEMENT OF THE CASE .............................................................. 5

I.  Factual Background ................................................................. 5

II.  Procedural History ................................................................ 13

SUMMARY OF THE ARGUMENT ...................................................... 16

ARGUMENT ...................................................................................... 18

I.  This Court's review of this FAA motion to compel is de novo. ....... 18

II.  The district court erred by refusing to compel arbitration where the parties' arbitration agreement expressly delegated all disputes—including disputes about arbitrability—to arbitration. ................................................................... 19

    A.  An arbitration agreement indisputably exists. .................... 21

    B.  The parties agreed to delegate all questions of arbitrability to the arbitrator. ........................................... 22

        1.  The Delegation Clause grants the arbitrator exclusive authority to decide arbitrability. ................. 22

2. The parties' incorporation of the AAA Commercial Arbitration Rules confirms the arbitrator, not a court, must decide arbitrability. ...................................25

C. The Doctors' TUFTA lawsuit is a dispute covered by the delegation clause. ...............................................................26

D. In any event, the TUFTA suit is a new and independent action that falls outside the district court's enforcement power. 30

1. New claims against new defendants make this a truly independent action. .............................................31

2. The Doctors' out-of-circuit cases have no application here. ........................................................35

III. The Non-Signatory TUFTA Defendants Can Enforce the Delegation Clause. ..........................................................41

CONCLUSION ...................................................................................50

CERTIFICATE OF SERVICE..........................................................544

CERTIFICATE OF COMPLIANCE...................................................544

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett,*
556 U.S. 247 (2009) ....................................................................23

*Allied-Bruce Terminix Cos. v. Dobson,*
513 U.S. 265 (1995) ....................................................................18

*Am. Realty Tr., Inc. v. JDN Real Estate-McKinney, LP,*
74 S.W.3d 527 (Tex. App.—Dallas 2002, pet. denied) ........................26

*AT & T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986) ...............................................................23, 24

*Berry v. McLemore,*
795 F.2d 452 (5th Cir. 1986) ..........................................33, 34, 37, 38

*Butler v. Polk,*
592 F.2d 1293 (5th Cir. 1979) ...........................................................32

*Cerna v. Pearland Urban Air, LLC,*
714 S.W.3d 585 (Tex. 2025) .............................................................30

*Coinbase Inc. v. Bielski,*
599 U.S. 736 (2023) ......................................................................15

*Cure & Assocs., P.C. v. LPL Fin. LLC,*
118 F.4th 663 (5th Cir. 2024) .......................................................18, 48

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985) ......................................................................16

*E.E.O.C. v. Waffle House, Inc.,*
534 U.S. 279 (2002) ......................................................................47

*Epperson v. Ent. Express, Inc.,*
242 F.3d 100 (2d Cir. 2001) .........................................................38, 39

*Sullivan v. Feldman* (*Sullivan I*),
  132 F.4th 315 (5th Cir. 2025) ...................................................... passim

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...............................................................47

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*,
  22 S.W.3d 831 (Tex. 2000)......................................................46

*FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*,
  426 S.W.3d 59 (Tex. 2014)......................................................47

*Giron v. Dodds*,
  35 A.3d 433 (D.C. 2012).....................................................36, 37

*Green v. Serv. Corp. Int'l*,
  333 F. App'x 9 (5th Cir. 2009) ...............................................46, 47, 48

*Hammervold v. Blank*,
  3 F.4th 803 (5th Cir. 2021)......................................................33

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) ................................................................ passim

*Henry v. Cash Biz, LP*,
  551 S.W.3d 111 (Tex. 2018)....................................................22

*Iberia Credit Bur. v. Cingular Wireless*,
  379 F.3d 159 (5th Cir. 2004) ...................................................ix

*In re Bank One, N.A.*,
  216 S.W.3d 825 (Tex. 2007)....................................................45

*In re D. Wilson Constr. Co.*,
  196 S.W.3d 774 (Tex. 2006) (orig. proceeding) ....................................45

*In re Enron Corp. Sec., Derivative & "ERISA" Litigation*,
  MDL No. 1446, 2008 WL 4166172 (S.D. Tex. Aug. 29, 2008) .......38, 40

*Jones v. Kelley*,
  614 S.W.2d 95 (Tex. 1981)......................................................46

*KPMG LLP v. Cocchi,*
  565 U.S. 18 (2011) ................................................................ 16

*Kubala v. Supreme Prod. Servs., Inc.,*
  830 F.3d 199 (5th Cir. 2016) ..................................... passim

*Newman v. Plains All Am. Pipeline,*
  23 F.4th 393 (5th Cir. 2022) ........................................ 43, 44

*Peacock v. Thomas,*
  516 U.S. 349 (1996) ..................................................... 32, 33

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.,*
  139 F.3d 1061 (5th Cir. 1998) ..................................... 18, 21

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,*
  687 F.3d 671 (5th Cir. 2012) ..............................................25

*Rent-A-Ctr., W., Inc. v. Jackson,*
  561 U.S. 63 (2010) ........................................... 16, 19, 20, 24

*Rodgers-Glass v. Conroe Hosp. Corp.,*
  No. H-14-cv-3300, 2015 WL 4190598 (S.D. Tex. July 10, 2015) ......... 47

*RSL Funding, LLC v. Newsome,*
  569 S.W.3d 116 (Tex. 2018) .................................... 16, 23, 24

*Sain v. TransCanada USA Servs., Inc.,*
  Case No. H-22-cv-2921, 2023 WL 417476 (S.D. Tex. Jan. 25, 2023).. 48, 49, 50

*Scherk v. Alberto-Culver Co.,*
  417 U.S. 506 (1974) ........................................................ 18

*Sherer v. Green Tree Servicing LLC,*
  548 F.3d 379 (5th Cir. 2008) ............................................ 44

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
  559 U.S. 662 (2010) ..........................................................47

*Sullivan v. Feldman,*
  No. 4:20-CV-02236, 2020 WL 4451069 (S.D. Tex. Aug. 3, 2020),

opinion withdrawn and superseded, No. 4:20-CV-02236, 2020 WL
    4734982 (S.D. Tex. Aug. 14, 2020) ...................................................... 9

*Sullivan v. Feldman,*
    No. 4:20-cv-02236, 2020 WL 4734982 (S.D. Tex. Aug. 14, 2020) ........ 46

*Sullivan v. Feldman,*
    No. 4:20-CV-02236, 2023 WL 2392746 (S.D. Tex. Mar. 7, 2023) .......... 5

*Thomas, Head and Greisen Emps. Trust v. Buster,*
    95 F.3d 1449 (9th Cir. 1996) ....................................................... 38, 39

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC,*
    667 S.W.3d 694 (Tex. 2023) ................................................................ 25

*TransFirst Grp., Inc. v. Magliarditi,*
    No. 3:16-CV-1918-L, 2016 WL 10489861 (N.D. Tex. July 22, 2016) .......
    .................................................................................................... 27, 32

*Trina Solar US, Inc. v. Carson-Selman,*
    No. 2:20-CV-1308, 2021 WL 9869720 (D. Nev. 2021) .................... 35, 36

*Ueckert v. Guerra,*
    38 F.4th 446 (5th Cir. 2022) ............................................................... ix

*Viking River Cruises v. Moriana,*
    596 U.S. 639 (2022) ............................................................................ 19

*Zeiler v. Deitsch,*
    500 F.3d 157 (2d Cir. 2007) ..................................................... 31, 38, 39

## Statutes

9 U.S.C. § 2 ........................................................................................... 18

9 U.S.C. § 4 ........................................................................................... 18

9 U.S.C. § 16(a)(1)(A) ............................................................................ ix

9 U.S.C. § 16(a)(1)(B) ............................................................................ ix

28 U.S.C. § 1332 .................................................................................... ix

**Rules**

FED. R. APP. P. 4(a)(7)(B)..........................................................................ix

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction over this case because the district court denied the Feldman/Capstone Parties' motion to compel arbitration and motion to stay proceedings pending arbitration. The Federal Arbitration Act ("FAA") makes these orders hostile to arbitration immediately appealable.  *See* 9 U.S.C. § 16(a)(1)(A), (B); *Iberia Credit Bur. v. Cingular Wireless*, 379 F.3d 159, 164-65 (5th Cir. 2004). Appellate jurisdiction lies even though the district court made these rulings orally from the bench. *See* FED. R. APP. P. 4(a)(7)(B); *Ueckert v. Guerra*, 38 F.4th 446, 448-51 (5th Cir. 2022). The district court had subject matter jurisdiction because there is a complete diversity of citizenship between the parties. 28 U.S.C. § 1332.

**INTRODUCTION**

This case presents a straightforward application of settled law to a broad arbitration agreement and delegation clause this Court recently construed and upheld in a binding and published opinion resolving a dispute between many of the same parties. That history leaves no doubt: the parties entered into a valid arbitration agreement that contains a clear and unambiguous delegation clause. Nor is there any real question about who decides the scope of that agreement. The delegation clause—which this Court itself has specifically blessed—commits all issues of arbitrability to the arbitrator, not to the district court. The district court erred by inserting itself into this dispute, holding that the parties' dispute fell outside the scope of the arbitration clause, and denying Appellants' motion to compel arbitration.

The Doctors' attempt to rebrand this new action, arising under the Texas Uniform Fraudulent Transfer Act ("TUFTA") against new defendants under new theories, as a mere "enforcement" proceeding ancillary to a previous case—and thus somehow escape the scope of the delegation clause—does not work. However it is styled, the TUFTA suit is a separate controversy that stems from the same relationships and

agreements the parties have arbitrated all along. That makes it subject to arbitration—and to the delegation clause—no less than the disputes that already went to the arbitral forum.

Finally, if the Doctors assert as an alternative ground for affirmance that some defendants cannot invoke the arbitration provision because they were not signatories (as they have unsuccessfully done in the past), that argument would fare no better. The arbitration agreements construed together themselves extend to all signatories' "affiliates" under the express terms of the parties' agreement. The Doctors well know this having signed, inter alia, the Capstone Services Agreement which references the Doctors' signing on behalf of their "Affiliates," many of which are specifically named.

Finally, under equitable estoppel principles, the Doctors cannot both treat these non-signatory defendants as part of a single, integrated enterprise and simultaneously avoid an arbitration with those very parties. At every turn, the agreements the Doctors signed dictate the same result: arbitration—and for the arbitrator to at least determine the threshold question of arbitrability. The district court's refusal to compel

2

was error. This Court should reverse and remand so the pending arbitration before Arbitrator Gordon Russell may proceed.

## STATEMENT OF THE ISSUES

1. The broad arbitration provision in this case covers "any and all controversies, disputes or claims whatsoever" between the parties and incorporates the Commercial Arbitration Rules published by the American Arbitration Association ("AAA Rules"), which empower an arbitrator to rule on his or her own jurisdiction and issues of arbitrability. ROA.310. The arbitration provision's delegation clause states that "the issue of arbitrability shall . . . be decided by the arbitrator, and not by any other person. That is, the question of whether a dispute itself is arbitrable shall be decided solely by the arbitrator and not, for example, by any court." ROA.310. Did the district court err by holding that despite this broad arbitration provision and delegation clause, it had the authority to deny the Feldman/Capstone parties' motion to compel arbitration with the Doctors of this TUFTA dispute?

## STATEMENT OF THE CASE

### I.    Factual Background

This case is closely bound up with one that this Court has already decided—*Sullivan v. Feldman* (*Sullivan I*), 132 F.4th 315 (5th Cir. 2025)—though it presents distinct issues on the same underlying facts and under the same arbitration agreement this Court has already ruled on.

In the lawsuit underlying this Court's decision in *Sullivan I* (the "Original Suit"), the district court rendered a partial final judgment for Plaintiffs-Appellees Doctor Scott Sullivan and Doctor Frank DellaCroce (the "Doctors") and others confirming four "internally inconsistent" arbitral awards ("Partial Final Judgment") which the four arbitrators acknowledged cover the same dispute. *Sullivan I*, 132 F.4th at 333; *see Sullivan v. Feldman*, No. 4:20-CV-02236, 2023 WL 2392746, at *1 (S.D. Tex. Mar. 7, 2023). The Partial Final Judgment holds Defendants Stewart A. Feldman, The Feldman Law Firm LLP ("Law Firm"), Capstone Associated Services, Ltd., Capstone Associated Services (Wyoming), Limited Partnership, and Capstone Insurance Management, Ltd. ("Feldman/Capstone Parties") jointly and severally liable for over

$100 million in damages and interest.[5] ROA.13 (citing Partial Final Judgment). In contrast, the net judgment (after considering offsets awarded to the Feldman/Capstone Parties) against the Capstone/Feldman Parties under what the Feldman/Capstone Parties consider the only proper judgment was tendered two years ago and has since been paid in the amount of $1,050,000.

This Court affirmed the judgment in part and reversed it in part. *Sullivan I*, 132 F.4th at 321, 337. As relevant here, this Court held that the parties were entitled to continue arbitrating their dispute, precisely because the district court "committed an error that unnecessarily led to the internally inconsistent judgment now on appeal." *Id.* at 333. A further arbitration to untangle this web is now underway.

The Partial Final Judgment confirms four arbitration awards that sequentially resolved the same dispute arising out of the formation and administration of captive insurance companies—each governed by multiple instruments that all contain arbitration agreements.

---

[5]  The district court subsequently entered an amended partial final judgment that is currently being appealed. *See Sullivan v. Feldman*, No. 25-20408 (5th Cir. Sep. 17, 2025). The Feldman/Capstone parties believe, as they have expressed in filings in that case, that the district court violated the mandate rule in entering that amended partial final judgment.

6

Importantly, a delegation clause appears in each of these arbitration agreements, detailed below. Under that clause, the Doctors agreed to arbitrate the gateway issue of substantive arbitrability.

As this Court explained in *Sullivan I*, the delegation clause of the arbitration agreement was so broad that it gave the arbitrator "exclusive authority" to resolve "all disputes and challenges to the formation and enforceability of this arbitration agreement." *Id.* at 331; ROA.310 (text of delegation clause). In addition, this Court emphasized that AAA Rule R-7(a) gives the arbitrator "the power to rule on his or her own jurisdiction," including any "objections to the existence, scope or validity of the arbitration agreement." *Sullivan I*, 132 F.4th at 331 (quoting AAA Rule 7(a)). In so holding, this Court recognized that the arbitration provision "creates a limit of one arbitrator per dispute." *Id.* at 332 (quotation marks omitted).

***Joint Engagement Letter.*** The Joint Engagement Letter is one half of the parties' "entire agreement" at issue here. *See* ROA.323. It lays out the scope of the parties' obligations with respect to their reinsurance arrangement. ROA.296-334.

7

The Joint Engagement Letter includes an arbitration agreement which provides, in material part, that the Doctors agreed to arbitrate "any and all . . . controversies, disputes or claims whatsoever" they had with "the Firm (including its lawyers) *and/or its affiliates* (including Capstone Associated Services, Ltd., Capstone Insurance Management (Anguilla), Ltd., and/or Export Assurance) (including their employees, officers and directors)." ROA.310 (emphasis added). This includes disputes "related to or arising out of the Firm's or its affiliates' services or arising under or in connection with or related to any of the parties' agreements," with an exception for disputes about legal fees. ROA.310.

The arbitration agreement vests "exclusive authority" in an arbitrator to resolve the gateway question of arbitrability, as well "all disputes or challenges to the formation and enforceability of the arbitration agreement" and the "enforceability of the parties' agreements as a whole." ROA.310. In contrast, the arbitration agreement expressly "divest[ed] the courts of all powers in disputes involving the parties, except to compel arbitration, and to confirm, vacate or enforce [sic] award." ROA.310.

*Capstone Services Agreement.* The Capstone Services Agreement ("CSA") embodied the other half of the parties' "entire agreement," in conjunction with the Joint Engagement Letter. ROA.323, Art. VI ¶ 6.8. The CSA incorporates the arbitration provision in the Joint Engagement Letter by specific reference. ROA.322, Art. VI ¶ 6.4. The CSA also provided additional clarity to the scope of the arbitration agreement. For example, the CSA defined the term "affiliates" to have expansive reach:

> "Affiliates" means any person directly or indirectly controlled by or under common control with another person (whether such be an individual or an entity of any sort) and, in the case of partnerships, shall specifically include all partners, owners and beneficial holders of a person, and additionally includes their signatories, agents, employees, independent contractors, transferees, assigns, officers, members, directors, those with an interest in and all those in privity therewith.

ROA.313 (Definitions); *see Sullivan v. Feldman*, No. 4:20-CV-02236, 2020 WL 4451069, at *2 (S.D. Tex. Aug. 3, 2020), opinion withdrawn and superseded, No. 4:20-CV-02236, 2020 WL 4734982 (S.D. Tex. Aug. 14, 2020).

9

The breadth of the coverage for affiliates runs both ways, as the Doctors also signed the CSA on behalf of their "affiliates":

"CLIENT"

Dr. Scott K. Sullivan individually and as: (i) authorized signatory as an owner, either directly or through a holding company, of Cerberus Casualty Corp.; Janus Casualty Corp.; and Orion Casualty Corp. (or the existing Bahamian cells) and (ii) authorized signatory for St. Charles Surgical Hospital including all respective Affiliates

Dr. Frank J. DellaCroce individually and as: (i) authorized signatory as an owner, either directly or through a holding company, of Cerberus Casualty Corp.; Janus Casualty Corp.; and Orion Casualty Corp. (or the existing Bahamian cells) and (ii) authorized signatory for St. Charles Surgical Hospital including all respective Affiliates

ROA.324 (emphasis added).

And the parties left no doubt that the CSA's "terms and provisions," where the definition of "affiliates" appears, were incorporated into the Joint Engagement Letter:

> [T]he Parties hereto stipulate and agree that this [Capstone Services] Agreement amends the Engagement Letter (including its attachments and prior amendments) and agree to be bound by the terms and provisions of this Agreement as if incorporated into the Engagement Letter.

ROA.322, Art. IV ¶ 6.1.

*Reinsurance Agreements.* In addition to the Joint Engagement Letter and the CSA, the Doctors, along with their captive insurance companies and the other judgment creditors from the Original Suit, also signed multiple 2016, 2017, 2018, and 2019 "Stop Loss Reinsurance Agreements" and related Quota Share Reinsurance Policies (collectively, "Reinsurance Agreements") that contain broad arbitration agreements and delegation clauses. In those agreements, the Doctors agreed to arbitrate all disputes between the parties:

> [a]ny dispute arising out of or relating to or touching upon [the particular policy], the relationship among the signatories hereof, or any related or underlying insurance policy, or regarding claims or any part of the insuring arrangement of any nature whatsoever, including but not limited to (i) those sounding in contract, constitutional, statutory, or common law theories as to the performance of any obligations, the satisfaction of any rights, and/or the enforceability hereof, or (ii) claims that either party has breached an agreement[.]

ROA.341; ROA.354; ROA.369; ROA.383; ROA.396; ROA.409.

All the defendants in this suit either signed (or authorized to be signed) these Reinsurance Agreements as named insureds for the years covered by the Original Suit, or qualify as an "insured" under the

11

applicable policy definitions, except for Stewart Feldman, as Trustee of the 1998 Irrevocable Family Trust and as Trustee of the Benjamin and Sylvia Feldman Grandchildren's Trust; MNS Investments, Limited Partnership; MNS Management Corp.; Mesquite Holdings, LLC; 2705 Vermont Associates, LLC; and Beringhouse Holdings, LLC. ROA.513; ROA.519; ROA.546; ROA.554; ROA.562; ROA.593; ROA.601-602; ROA.608-609; ROA.641; ROA.679-680, Decl. of Stewart A. Feldman.

The dispute that made up the Original Suit arose out of the reinsurance premiums the Doctors' captive insurance companies paid under the Reinsurance Agreements to the reinsurance pool managed by PoolRe Insurance Corp. In the Original Suit, the Doctors complained in part about paying reinsurance premiums under the Reinsurance Agreements to reinsure potential malpractice claims that arose under policies issued by A.M.Y. Property & Casualty Insurance Corp. covering the Law Firm as an insured.

The awards issued by the arbitrators were to have resolved that dispute and others, and the Partial Final Judgment confirmed those four awards. *Sullivan I*, 132 F.4th at 321, 323-25. However, the four awards on the same dispute directly conflict with one another and are

12

irreconcilable. *Id.* at 325. For this reason, yet another arbitration is pending to resolve these matters.

## II.   Procedural History

Alleging TUFTA violations, among other things, the Doctors filed suit in the district court seeking to collect on the largest of the "internally inconsistent judgments" awarded in the Partial Final Judgment, whose lineage traces back to the underlying dispute governed by the arbitration agreements and the Delegation Clauses. *See generally* ROA.13-70; *see also* ROA.22-23 ¶¶ 48-49; ROA.39 ¶ 89; ROA.41 ¶¶ 99-100; ROA.52-53 ¶¶ 150-52; ROA.58 ¶ 175.

The Doctors brought this suit in a new case against the Feldman/Capstone Parties as judgment debtors in the Original Suit, as well as other new defendants ("TUFTA Defendants") who allegedly benefited from fraudulent transfers allegedly made by the Feldman and Capstone Parties over time. ROA.13-70. The TUFTA Defendants were not parties in the Original Suit or in the four arbitrations. ROA.13 (listing defendants). No tribunal has adjudicated the TUFTA Defendants' rights and liabilities. Nor does the Partial Final Judgment name the TUFTA Defendants as judgment debtors. In their complaint, the Doctors

13

allege that Stewart Feldman "and/or" Marla Matz exercise common ownership and control over all the Defendants. ROA.64 ¶ 213.

The Doctors asked the district court to unwind numerous allegedly fraudulent asset transfers between the Feldman/Capstone Parties and the TUFTA Defendants. ROA.53-62. The Doctors also alleged alter ego theories and sought declaratory relief allowing them to pierce the corporate veil of all the Defendants to attempt to collect on the Partial Final Judgment. ROA.64-66. Finally, the Doctors also asked the district court to enjoin further asset transfers between the Defendants. ROA.66-67. In their TUFTA complaint, the Doctors characterized this suit as one to "enforce" the "awards" issued by the arbitrators and contended this action lay exclusively within the district court's "continuing" or "ancillary" jurisdiction. ROA.22-23. The Doctors thus refused to arbitrate their claims.

Defendants filed a Motion to Dismiss the Complaint by Compelling Arbitration and initiated an arbitration before Arbitrator Gordon Russell to resolve the dispute. ROA.265-95; ROA.689. The Doctors moved to enjoin that arbitration. ROA.719-20. Later the very same day, the district

14

court granted the Doctors' motion, without entertaining briefing by any of Defendants on the injunction request. ROA.795-96.

Subsequently, the district court denied the motion to dismiss "because the arbitration agreement between the plaintiffs and the Sullivan and Capstone parties vests enforcement jurisdiction over confirmed arbitration awards with the court." ROA.11. In its oral remarks during the hearing, the district court elaborated somewhat. Among other things, the district court observed that "the engagement letter containing the arbitration clause vests enforcement jurisdiction over confirmed arbitration awards with the Court…." ROA.1009. The district court then held that "the TUFTA case is an effort to collect on the judgment resulting from the arbitration merits that is the subject of the prior case." ROA.1009. Thus, the district court concluded that the dispute was not arbitrable: "I don't think that the parties are contractually bound to arbitrate the post-judgment enforcement TUFTA claims." ROA.1012.

This appeal followed, and the proceedings below were automatically stayed under *Coinbase Inc. v. Bielski*, 599 U.S. 736, 738, 740–44, 747 (2023). ROA.981-84; ROA.985.

15

## SUMMARY OF THE ARGUMENT

The district court was required to compel arbitration because of the broad delegation clause in the parties' arbitration agreement. The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that courts shall direct the parties to proceed to arbitration on issues" they agreed in writing to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 21-22 (2011) (per curiam). Here, the Doctors agreed under the Delegation Clause to send all issues of substantive arbitrability to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). And Texas law falls in line with federal law allowing the parties to delegate the threshold issue of arbitrability. *See RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018).

The district court did not disagree with any of these black-letter legal principles. Instead, the court held that because the arbitration agreement left "enforcement" proceedings for "awards" to the Court, that

16

meant the arbitration agreement between the parties did not cover the TUFTA action at all. This conclusion is doubly wrong.

First, it ignores that the delegation clause in the arbitration agreement entrusts all questions of arbitrability to the arbitrators, especially those regarding the arbitration agreement's scope. "[T]he issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person." The Delegation Clause leaves no room to interpret what words in the arbitration agreement like "enforce" mean. Whether the TUFTA action is covered by the arbitration proceeding is for the arbitrator, not for the district court.

Second, even if that question were somehow for the courts, a TUFTA suit is not an "enforcement" proceeding within the meaning of the arbitration provision because it is a new and independent action that stands apart from both the first action and from the "award." The district court erred in even construing the arbitration agreement's terms in the first instance, in misinterpreting the words "enforce" and "enforcement," and in refusing to compel arbitration.

17

## ARGUMENT

### I. This Court's review of this FAA motion to compel is de novo.

A district court's decision to deny a motion to compel arbitration under the FAA is reviewed de novo.[6] *See Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 668 (5th Cir. 2024).

The FAA applies here because the underlying business transactions cross state lines (Texas, Louisiana, and Delaware), thereby implicating interstate commerce. *See* 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-81 (1995). Arbitration operates as a creature of contract that depends on the consent of the parties. *Rent-A-Ctr.*, 561 U.S. at 69-70. District courts applying the FAA have no discretion to refuse to compel arbitration where the parties' agreement requires it. 9 U.S.C. § 4 ("The court . . . *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") (emphasis added).

---

[6]  Where the district court has determined "whether equitable estoppel may be invoked to compel arbitration," *Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 668 (5th Cir. 2024), this Court applies an abuse of discretion standard to review that decision. However, because the district court here did not reach the issue of equitable estoppel, in the event this Court decides to reach the question of equitable estoppel, that would be this Court's decision in the first instance.

In this way, an arbitration provision serves as "a specialized kind of forum-selection clause" that fixes the situs of the proceeding to resolve the dispute. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). The arbitration agreement here simply shifts determination of the Doctors' TUFTA claims from a judicial forum to an arbitral one without "alter[ing] or abridg[ing] substantive rights." *Viking River Cruises v. Moriana*, 596 U.S. 639, 653 (2022). Under the FAA, an arbitration agreement "merely changes how those rights will be processed" by an arbitrator instead of a court pursuant to a consensual arrangement. *Id.*

## II. The district court erred by refusing to compel arbitration where the parties' arbitration agreement expressly delegated all disputes—including disputes about arbitrability—to arbitration.

Both the United States Supreme Court and this Court have "consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 69 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)); *Sullivan I*, 132 F.4th at 327. Courts must treat the Delegation Clause here like any other arbitral agreement, giving it the same force and legal effect. *See Rent-A-Ctr.*, 561 U.S. at 69-70. "An agreement to arbitrate a

gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70.

"[A] valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). "[I]f the party seeking arbitration points to a purported delegation clause, the court's analysis is limited" and entails two steps. *Id.* The first step "is contract formation—whether the parties entered into *any arbitration agreement at all.*" *Id.* at 201. As to the second step, "the only question . . . is whether the purported delegation clause is in fact a delegation clause— that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* at 202. "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 586 U.S. at 69. "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202.

20

Application of the two steps—whether there is a valid arbitration agreement, and whether that arbitration agreement contains a delegation clause—demonstrates the district court's error in denying arbitration here.

## A.    An arbitration agreement indisputably exists.

Here, the arbitration agreement grants the arbitrator broad powers and exclusive authority to resolve "any and all . . . controversies, disputes or claims whatsoever," including those regarding the scope of the arbitration agreement, any challenges to the arbitration agreement, and the merits of any underlying dispute. ROA.309-310.

The parties agreed in the Joint Engagement Letter to arbitrate "any and all controversies, disputes or claims whatsoever" involving the Doctors and the Law Firm "and/or its affiliates," including the Capstone companies, "related to or arising out of the Firm's or its affiliates' services or arising under or in connection with or related to any of the parties' agreements," with an exception for disputes about legal fees. ROA.310.

This broad arbitration clause covers any dispute that "touch[es] matters covered by" the categories the parties agreed to arbitrate, and will "embrace all disputes between the parties having a significant

21

relationship to the contract regardless of the label attached to the dispute." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067, 1068 (5th Cir. 1998); *accord Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115-16 (Tex. 2018) (broad term "disputes" reaches farther than "claims"). And the arbitration agreements in the multiple Reinsurance Agreements likewise contain broad arbitration provisions "capable of expansive reach." *Pennzoil*, 139 F.3d at 1067; ROA.341; ROA.354; ROA.369; ROA.383; ROA.396; ROA.409. Finally, the procedural history of this case can leave no doubt as to the existence or validity of the arbitration agreement, as the parties and this Court itself have recognized. *Sullivan I*, 132 F.4th at 322-24, 326-27.

## B. The parties agreed to delegate all questions of arbitrability to the arbitrator.

### 1. The Delegation Clause grants the arbitrator exclusive authority to decide arbitrability.

The arbitration agreement also contains a broad Delegation Clause to send all gateway questions of arbitrability straight to an arbitrator: "[t]he parties agree that the issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person. *That is, "the question of whether **a dispute itself** is arbitrable shall be decided **solely** by the arbitrator and not, for example, by any court."* ROA.310 (emphasis

22

added). The parties have made their agreement especially clear for the reader, by broadly contracting to divest the courts of all jurisdiction in favor of the arbitrator's decision making authority. As with the arbitration provision, this Court has recognized the breadth of this very delegation clause. *Sullivan I*, 132 F.4th at 322-24, 326-27.

Where, as here, the parties include a delegation clause, the Court decides only the narrow issue of "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. The apparent merits of the underlying dispute are irrelevant: a district court must refer an arbitrable dispute to arbitration "even if it appears to the court to be frivolous" or "arguable." *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986) ("a court is not to rule on the potential merits of the underlying claims" in deciding a motion to compel arbitration). Thus, parties may contract to arbitrate issues "even when the law vests some related exclusive power in a court," especially because "[a]rbitrators are competent to decide any legal or factual dispute the parties agree to arbitrate." *RSL Funding,*

*LLC*, 569 S.W.3d at 121; *accord 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 268-69 (2009).

Here, the Doctors agreed with the Feldman/Capstone Parties to submit "any and all . . . controversies, disputes or claims whatsoever" to arbitration, "not merely those which the court will deem meritorious." *AT&T Techs., Inc.*, 475 U.S. at 650. And through the Delegation Clause, the Doctors went further and agreed, in clear and unmistakable language, that an arbitrator alone must determine the arbitrability of the dispute framed by the TUFTA lawsuit. *See Henry Schein*, 586 U.S. at 65, 67-69.

Like the arbitration agreement itself, the Delegation Clause here is both broad and unchallenged. *See Rent-A-Ctr.*, 561 U.S. at 72 (enforcing delegation clause party opposing arbitration never specifically challenged); *RSL Funding, LLC*, 569 S.W.3d at 120-22, 124 (same). The express language of the Delegation Clause manifests the parties' clear and unmistakable *intent* to delegate all bilateral arbitrability issues to the arbitrator. *See Rent-A-Ctr.*, 561 U.S. at 69 n.1. Indeed, this Court, interpreting that very provision, observed that "the arbitrator has exclusive authority to resolve all disputes and challenges to the formation

24

and enforceability" of the arbitration agreement. *Sullivan I,* 132 F.4th at 331.

### 2. The parties' incorporation of the AAA Commercial Arbitration Rules confirms the arbitrator, not a court, must decide arbitrability.

This Court can stop (and the district court should have stopped) at the existence of the Delegation Clause. Even further, however, and to remove all doubt, the arbitration agreements in both the Joint Engagement Letter and the Reinsurance Agreements contain another clear and unmistakable example whereby the parties chose to delegate arbitrability to the arbitrator: by specifically incorporating the Commercial Arbitration Rules published by the AAA. ROA.310; ROA.341-342 (exemplar).

This Court has recognized, along with numerous other courts around the country, "that the express adoption of these [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases); *see also TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 708 (Tex. 2023); AAA Comm'l Arb. Rules R-7; *Sullivan I*, 132 F.4th

at 322-24, 326-27. Here, the parties to the Joint Engagement Letter agreed to "conduct[ ]" any arbitration "pursuant to" those Rules, thereby delegating arbitrability to the arbitrator under this Court's longstanding precedent. ROA.310. Thus, the arbitrability "dispute" must go to arbitration.

### C.    The Doctors' TUFTA lawsuit is a dispute covered by the delegation clause.

The TUFTA lawsuit falls squarely under both the arbitration agreement and its Delegation Clause. The broad arbitration agreement in the Joint Engagement Letter authorizes the arbitrator to resolve "any and all controversies, disputes or claims whatsoever," while the Delegation Clause empowers the arbitrator to determine "whether a dispute itself is arbitrable." ROA.309-10. The arbitration agreement does not define "controversy," "dispute," or "claim." However, to the extent there is any debate over whether the TUFTA action is a "controversy," "dispute," or "claim" that is subject the arbitration agreement, the arbitrator, *not* a court, must make that interpretive decision. *See Kubala*, 830 F.3d at 204. In other words, contract interpretation is beyond the district court's analysis. *Id.* Of this there can be no doubt.

Even accepting the plain and ordinary meanings of "controversy," "dispute," or "claim," however, leaves the parties in the same position: improperly before the district court instead of an arbitrator. *See Am. Realty Tr., Inc. v. JDN Real Estate- McKinney, LP*, 74 S.W.3d 527, 532 (Tex. App.—Dallas 2002, pet. denied) ("A 'dispute' is a controversy, debate, or quarrel. A 'claim' is a request or demand." (quoting Webster's Third New Int'l Dictionary Unabridged 414, 655 (1981))). The TUFTA lawsuit is a new lawsuit the Doctors initiated against the Defendants, independently of all prior related litigation and the district court's Partial Final Judgment. *See* ROA.13-72, 75; *TransFirst Grp., Inc. v. Magliarditi*, No. 3:16-CV-1918-L, 2016 WL 10489861, at *2 (N.D. Tex. July 22, 2016) (alter ego allegations plus claims for fraudulent transfer seeking compensatory and punitive damages in separate suit fell outside district court's ancillary jurisdiction to enforce an existing judgment). And the "claims" the Doctors assert in the TUFTA lawsuit present an arbitrable "controversy," "dispute," or "claim"—specifically, seeking both legal and equitable relief for a variety of allegedly fraudulent asset transfers, including actual and exemplary damages as well as the remedy of alter ego. ROA.13, 52-70.

27

The Doctors' allegations similarly establish that those claims are "related to or arising out of the Firm's or its affiliates' services or arising under or in connection with or related to any of the parties' agreements." ROA.310, 14-15. For example, the Doctors' stated purpose of the TUFTA lawsuit is to prevent "interfere[nce] with the Doctors' collection and enforcement rights as judgment creditors" under the district court's Partial Final Judgment. ROA.15. Yet, as pleaded, that Partial Final Judgment "held the Feldman debtors solidarily liable" for actions the Feldman/Capstone Parties allegedly took with respect to the parties' Joint Engagement Letter, business relationship, and attorney-client relationship. ROA.14.

By the Doctors' own allegations, then, the TUFTA lawsuit—as a dispute relating to the parties' underlying actions toward each other and with respect to the Joint Engagement Letter—is subject to the arbitration agreement and its Delegation Clause. ROA.310. The arbitrability of the TUFTA lawsuit—including the Doctors' contention that this action lay within the district court's "continuing" or "ancillary" jurisdiction, ROA.22-23—was then a question for the arbitrator, *not* the district court. *See Henry Schein*, 586 U.S. at 65, 67-69.

Nevertheless, the district court took it upon itself to construe the arbitration agreement and answer that question. And it did so in error. For example, at the oral hearing on Defendants' motion to dismiss the TUFTA lawsuit, the district court recognized all the essential elements of the TUFTA lawsuit's arbitrability: that the TUFTA lawsuit was "separate" from the prior litigation (*i.e.*, a new controversy), and that the TUFTA lawsuit "is an effort to collect on the judgment resulting from the arbitration merits that is the subject of the prior case" (*i.e.*, relating to an arbitrable dispute between the parties). ROA.1009.

The district court should have stopped there and sent the TUFTA lawsuit to arbitration, where the parties hotly disputed the district court's jurisdiction to hear the TUFTA lawsuit over the undisputed Delegation Clause. The district court, however, took the impermissible next step of determining arbitrability itself. ROA.1011 ("It's not a dispute arising out of the parties' arbitration agreement."); 11 ("[T]he arbitration agreement between the plaintiffs and the Sullivan and Capstone parties vests enforcement jurisdiction over confirmed arbitration awards with the court, and the court's enforcement jurisdiction includes the authority to resolve the post-judgment enforcement claims asserted by the

29

plaintiffs."). And in fact the language of the arbitration agreement departs from the district court's holding regarding its enforcement jurisdiction because the arbitration agreement encompasses "all other controversies, disputes or claims whatsoever . . . arising out of the Firm's or its affiliates' services or arising under or in connection with or related to any of the parties' agreements." ROA.310. In doing so, the district court simply ignored the language of the agreement it was construing.

This was error. Because "there is a delegation clause, the motion to compel arbitration should be granted" without more. *Kubala*, 830 F.3d at 202.

**D.    In any event, the TUFTA suit is a new and independent action that falls outside the district court's enforcement power.**

This Court should go no further than to hold that the delegation clause gives the question of arbitrability to the arbitrator. As noted above, the arbitration agreement states that "whether a dispute itself is arbitrable shall be decided solely by the arbitrator and not, for example, by any court." ROA.310. And AAA Rule 7(a) reinforces that the arbitrator has the power to rule on his or her own jurisdiction," including any "objections with respect to the existence, scope or validity of the

arbitration agreement." *Sullivan I*, 132 F.4th at 331. Those delegation provisions are fully dispositive of this case, especially the issue of scope. *See Cerna v. Pearland Urban Air, LLC*, 714 S.W.3d 585, 592 (Tex. 2025) ("If . . . a party seeks to compel arbitration of a dispute wholly outside an existing agreement, it is the arbitrator who decides the question, including whether compelling arbitration in such circumstances was frivolous."), *petition for cert. filed* (Aug. 25, 2025) (No. 25-221). The Court should simply hold that the district court erred in refusing to delegate the question of arbitrability and reverse.

### 1.    New claims against new defendants make this a truly independent action.

The district court's conclusion that the TUFTA case falls within an exception to the delegation clause because it is "enforcement" of an existing judgment was simply wrong. As the Doctors conceded in their Complaint, even if one accepts the theory that the question of "enforcement of the award" is not delegated, the district court only has whatever power that is contained within its "ancillary jurisdiction over subsequent proceedings." ROA.23 (citing *Zeiler v. Deitrich*, 500 F.3d 157, 170 (2d Cir. 2007)).  Even according to the Doctors, any question about

the scope of arbitrability outside that narrow category is delegated to the arbitrator.

The dispute here falls well-within the delegation clause because the TUFTA action, like a garnishment action, is an "independent suit[]" in relation to "the primary action." *Butler v. Polk*, 592 F.2d 1293, 1295 (5th Cir. 1979); *see also* ROA.1009 (district court "agree[ing] that these [lawsuits] are separate"). Cases from both this court and other courts in the circuit make this clear. In *TransFirst Group v. Magliarditi*, a judgment creditor in a separate suit alleged alter ego and claims for fraudulent transfer seeking compensatory and punitive damages. 2016 WL 10489861 at *1. The court there concluded that it could exercise no ancillary jurisdiction to enforce an existing judgment in the separate suit. *Id.* at *2 (independent suit raised "new theories of liability and different facts from Plaintiffs' prior suit").

The court in *TransFirst Group* relied on the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996):

> The Supreme Court has cautioned federal courts "against the exercise of jurisdiction over proceedings that are entirely new and original or where the relief [sought is] of a different kind or on a different principle than that of the prior decree.

2016 WL 10489861 at *2 (quoting *Peacock*, 516 U.S. at 358).

*Peacock* is clear: a court impermissibly "exercise[s] . . . ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Peacock*, 516 U.S. at 357. That extends to subsequent lawsuits "founded not only upon different facts than the [underlying] suit, but also upon entirely new theories of liability." *Id.* at 358. It is in derogation of *Peacock*'s clear holding that the Doctors are seeking in this litigation to make the TUFTA Defendants answer for the Partial Final Judgment the district court rendered in the Original Suit where they were not parties.

This Court's cases reinforce *Peacock's* lesson. As this Court has held in discussing the reach of post-judgment jurisdiction to enforce a judgment, courts do not have "ancillary jurisdiction" over a "new and independent action" to "satisfy or give additional meaning to an earlier judgment." *Berry v. McLemore*, 795 F.2d 452, 455 (5th Cir. 1986). Instead, a court's "post-judgment jurisdiction…is limited to those actions that a court may take in that *same action*." *Id.* (emphasis added).

Thus, in *Berry*, the district court lacked jurisdiction to handle a garnishment action because it was not a "post-judgment motion to, or

writ of execution to the judgment" in the main case, but a new matter entirely. *Id.* at 455; *see also Hammervold v. Blank*, 3 F.4th 803, 809 (5th Cir. 2021) (actions ancillary to judgment include "motions for attorney's fees" but not "action[s] separate and independent from the action giving rise to the judgment."). In fact, *Berry* expressly distinguished its holding from circumstances where a "motion to enforce the previous judgment was filed as part of the original action before the three-judge court, and the relief only sought enforcement against the defendant who was bound by that judgment." *Berry*, 795 F.2d at 455.

These cases map directly onto the facts here. If the district court did have any power to "enforce" the "award" without reference to the arbitrator, that power cannot possibly reach a new case against new parties where the TUFTA claims rest on far different essential elements and require different proof.

That does not mean the arbitration agreement's enforcement provision is toothless. No party has disputed the district court's ability to take enforcement actions, like postjudgment discovery orders, in the Original Suit. *See Sullivan v. Feldman*, No. 4:20-cv-02236, (S.D. Tex. Sep. 5, 2021) (order for postjudgment discovery). But the district court erred

34

in deciding it also had enforcement jurisdiction over this separate and independent lawsuit, especially where the parties' arbitration agreement expressly delegates the threshold question of arbitrability to the arbitrator.

### 2. The Doctors' out-of-circuit cases have no application here.

The out-of-circuit precedent that the Doctors cited below (and presumably will cite on appeal) is not relevant to this question. *See* ROA.921, 927, 930-31.

First, the Doctors ignore that many of their cited cases involve narrower arbitration language. For example, the Doctors pointed to the inapposite case of *Trina Solar US, Inc. v. Carson-Selman*, No. 2:20-CV-1308, 2021 WL 9869720 (D. Nev. 2021), for the proposition that a new alter ego suit was within the district court's ancillary jurisdiction. ROA.929-30. But in that case, the arbitration provision was limited to disputes "arising out of or in connection with the Contract." *Id.* at *1, 3. In that context, it might (although it remains uncertain) make sense to say that an alter ego claim could fall outside the arbitration provision. But the arbitration provision in this case says that "submission of the dispute to arbitration under this agreement shall be the sole and

exclusive forum for resolving *any and all* disputes between the parties" (including their affiliates). ROA.310 (emphasis added).

And even the *Trina Solar* court admits that where there is a "material factual difference between the new dispute and the one previously arbitrated, the matter must go to fresh arbitration rather than to the court for judicial enforcement." 2021 WL 9869720 at *3 (internal quotation omitted). In recognizing this settled legal principle, "the court join[ed] many of its sister courts in holding that a court has ancillary jurisdiction to enforce a judgment entered on an arbitration award involving the *same* dispute." *Id.* (emphasis in original). Here, the Doctors never presented a TUFTA claim to any of the four arbitrators in the prior proceedings, making this dispute a new one between the parties and rendering this rule inapplicable.

Second, the Doctors' reliance on *Giron v. Dodds*, 35 A.3d 433 (D.C. 2012) is misplaced because *Giron* involved an enforcement action *in the original action*, not a separate action like in this case. ROA.930-31. There, the Dodds contracted with C & C General Builders, which agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof." *Giron*, 35 A.3d at 435. When a dispute

arose, the Dodds sued the Girons in trial court, which compelled arbitration. *Id.* In arbitration, the Dodds added C & C as a defendant. *Id.* The arbitrator dismissed the claims against the Girons but awarded damages against C & C. *Id.* at 435-36.

When the Dodds discovered C & C was "asset-less," they (1) sought confirmation of the award and (2) filed an amended complaint to pierce the corporate veil and hold the Girons personally liable. *Id.* The Girons moved to compel arbitration, arguing the amended complaint was "merely a continuation" of the original suit and thus within the arbitration clause. *Id.* at 437. The trial court disagreed, and the court of appeals affirmed. *Id.* at 438-39.

The D.C. Court of Appeals concluded that "the Dodds' claim to pierce the corporate veil does not involve a new dispute 'arising out of or relating to this contract, or the breach thereof,'" but arose from "the Dodds' efforts to collect the arbitration award rendered in their favor." *Id.* at 438. Because the Dodds had "already submitted their contract claims against C & C to arbitration, and . . . now seek to hold C & C's shareholders individually liable for the arbitration award," the court held

37

the trial court could "properly examine whether that award can be enforced against an individual shareholder." *Id.* (citation modified).

That is not this case. Here—aside from the broader arbitration clause—the Doctors' claims are a "new dispute," as shown by their brand-new lawsuit. *Cf. id.*; *see also Berry*, 795 F.2d at 455; ROA.1009 ("I do agree that these are separate."). Unlike in *Giron*, the potential liability of the TUFTA Defendants has never been adjudicated or submitted to arbitration. Because this is a new action, with new claims against new defendants, it is a "new and independent action" beyond any ancillary jurisdiction to enforce an earlier arbitration award. *See Berry*, 795 F.2d at 455.

Nor does the narrow question *Giron* addressed—whether "the trial court may properly examine whether that award can be enforced against an individual shareholder," *Giron*, 35 A.3d at 438 (citation modified)—have any bearing here. The Doctors do not allege that any TUFTA Defendant is a shareholder of the Feldman/Capstone entities against whom the arbitration award issued.

Finally, none of the other four out-of-circuit caselaw the Doctors cited below for the general proposition that "post-judgment enforcement

claims are squarely within the Court's ancillary jurisdiction to enforce its own judgments" is any more analogous here. ROA.927 (citing *Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007); *Epperson v. Ent. Express, Inc.*, 242 F.3d 100 (2d Cir. 2001); *Thomas, Head and Greisen Emps. Trust v. Buster*, 95 F.3d 1449 (9th Cir. 1996); *In re Enron Corp. Sec., Derivative & "ERISA" Litigation*, MDL No. 1446, 2008 WL 4166172 (S.D. Tex. Aug. 29, 2008)).

In *Zeiler*, the Second Circuit upheld a court's ability to enforce an arbitration award by ordering additional accountings. 500 F.3d at 170. But that award involved the same claims, same defendants, and the same lawsuit, *id.* at 163-34—not new claims with different essential elements against new defendants in a new case, as here.

*Epperson* involved fraudulent-conveyance claims against insiders of the judgment debtor. 242 F.3d at 102-03. Applying Connecticut law, the court distinguished fraudulent-conveyance claims as "simple collection mechanisms" rather than independent claims imposing liability on a new party. *Id.* at 107. The opposite is true here: the Doctors filed a separate lawsuit asserting alter-ego liability and exemplary-damage claims against entirely new defendants. ROA.64-68.

*Thomas, Head and Greisen* likewise involved only a post-judgment amendment to an existing petition to add fraudulent-transfer claims, which the Ninth Circuit treated as a "supplementary proceeding" within the original case. 95 F.3d at 1452-53. Again, the Doctors filed a brand-new action, asserting multiple substantive claims.

And finally, *Enron* turned on the court's express reservation of jurisdiction to enforce its own settlement orders. 2008 WL 4166172, at *11. No such express reservation exists here, where instead the parties agreed broadly to submit "any and all" disputes to arbitration. ROA.310.

Even beyond the fact that most of these cases involve enforcement proceedings in the *same* suit to enforce an award, rather than a separate suit seeking also to saddle new defendants with new liability claims for that award, the critical distinction is this: even if those cases show that courts may exercise ancillary jurisdiction over post-judgment collection proceedings, none addressed the threshold issue presented here—whether such a proceeding is subject to arbitration. Not one involved an arbitration agreement, much less a broad delegation clause. That difference is decisive: where the parties agreed to arbitrate disputes over

40

enforcement, no out-of-circuit precedent can supply jurisdiction the arbitration agreement withholds in favor of the arbitrator.

The district court lacked authority to consider the Doctors' arguments about the scope of the arbitration provision. But to the extent it did, it was incorrect. The arbitration provision in this case delegates whether the TUFTA case is arbitrable to the arbitrator. Because the district court refused to follow that rule, the order below refusing to compel the parties to the pending arbitration before Arbitrator Gordon Russell must be reversed.

## III. The Non-Signatory TUFTA Defendants Can Enforce the Delegation Clause.

The district court did not decide the nonsignatory TUFTA Defendants could not enforce the arbitration agreement. Instead, the district court held that *no* defendant could enforce the arbitration agreement. For that reason, this Court need not reach whether the nonsignatory TUFTA Defendants are covered by the arbitration agreement. In turn, this Court should hold only that the district court erred in failing to apply the delegation clause of the Arbitration Agreement, and remand. Nonetheless, because the Doctors are likely to argue the nonsignatory issue as an alternative ground for affirmance

41

with respect to some of the defendants, they are wrong on that point as well.

*First*, although none of the TUFTA Defendants signed the Joint Engagement Letter or were involved in the proceeding below which led to the judgment upon which the TUFTA action is purportedly to collect, these TUFTA defendants are bound up in the arbitration agreement because these persons or entities are within the defined term "affiliates." Among these are A.M.Y. Property & Casualty Insurance Corporation; A.M.Y. Operating Co., LLC; 2075 Vermont Associates, LLC;  MNS Investments, Limited Partnership; MNS Management Corp.; RSL Funding, LLC, RSL-3B-IL, Limited Partnership; RSL Special-IV, Limited Partnership; RSL-5B-IL, Limited Partnership; Extended Holdings, Limited Partnership; RSL 2012-1, L.P., RSL-3B-IL Management, LLC; RSL Special Management Corp.; RSL-5B-IL Management, LLC; Extended Management, LLC; RSL 2012-1 Management, LLC; and possibly within the Appellees' reference, "John Doe" defendants Marla B. Matz, Trustee of The Marla B. Matz Trust under the 1998 Irrevocable Family Trust, and Dr. Matz individually. ROA.15-21.

42

Significantly, the TUFTA Defendants signed or accepted the millions of dollars of insurance benefits under the many insurance policies referenced in the Reinsurance Agreements and the related other insuring agreements, containing the same arbitration agreement with the Doctors. *See supra* at 11-12. To be clear, the Doctors through their captive insurers insured most of the TUFTA Defendants (and in turn received insurance premiums from them). *See* ROA.513; ROA.679-680.

As such, the Reinsurance Agreements similarly contain broad arbitration agreements along with enforceable delegation clauses. Because the Doctors (and their affiliates) signed these contracts and most of the TUFTA Defendants signed these same contracts and are further bound together by other reinsuring agreements (e.g., the Quota Share Reinsurance Policies) whereby the Doctors are insuring many of the TUFTA Defendants, the Court should compel those parties to arbitrate. *See Kubala*, 830 F.3d at 202-04. The analytical issue of contract formation, which the Court decides, excludes all "issues of contract interpretation." *Id.* at 203. The Court's inquiry ends if an arbitration agreement exists that contains a delegation clause. *Id.* at 203-04. "When a court decides whether an arbitration agreement exists, it necessarily

43

decides its enforceability between parties." *Newman v. Plains All Am. Pipeline*, 23 F.4th 393, 398 (5th Cir. 2022).

***Second***, even the Joint Engagement Letter covers the Non-Signatory TUFTA Defendants under its broad coverage for "affiliates" of the signatory defendants. This Court has made it clear that courts should look to the contract's terms to determine with whom a signatory must arbitrate. *See id.* at 399. "To that end, deciding enforceability between the parties and an arbitration agreement's existence are two sides of the same coin." *Id.* at 398. The terms of the arbitration agreement by themselves determine the parties that must arbitrate, foreclosing resort to "various theories of contract and agency law." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008).

The Joint Engagement Letter's arbitration agreement captures the Doctors' claims against the Non-Signatory TUFTA Defendants. By incorporating the Joint Engagement Letter's arbitration agreement, the CSA does likewise. The arbitration agreement applies to all the Law Firm's "affiliates," as defined. ROA.310 The CSA, whose terms and provisions are incorporated into the Joint Engagement Letter, broadly defines the pivotal word "affiliates" to include, in part, "any person

directly or indirectly controlled by or under common control with another person (whether such be an individual or an entity of any sort)." ROA.323, 313 (¶ 6.1). Many of the Non-Signatory TUFTA Defendants satisfy this definition of "affiliates."[7] ROA.675-79, Decl. of Stewart A. Feldman.

Because the Joint Engagement Letter and the CSA cross-incorporate one another, the Court reads and construes these two instruments together, including the arbitration agreement. *See In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (per curiam). "Innumerable contracts are consummated every day in Texas that incorporate other documents by reference. A contractual term is not rendered invalid merely because it exists in a document incorporated by reference, and we agree with the courts of appeals that arbitration-related language is no exception to this rule." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding) (omitting citations).

The Court presumes the Doctors, by signing the Joint Engagement Letter and the CSA (which is attached to and incorporated into the Joint

---

[7]    Marla B. Matz is the wife of Stewart Feldman, and is therefore also considered an affiliate as that term is defined in the CSA. *See* ROA.16.

Engagement Letter), know their contents and the contents of all the instruments they incorporate. *See In re Bank One, N.A.*, 216 S.W.3d at 826; ROA.307, 324. At least two arbitrators (Dorfman and Baker) have already recognized that the Doctors were represented by legal counsel and tax advisors in connection with entering into these agreements and that the Doctors themselves were sophisticated parties. These interrelated agreements pertaining to the same captive insurance transaction therefore form "a single, unified instrument" and "one contract" where the key word "affiliates" makes for a huge universe against which the Doctors must arbitrate. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (construing related contracts together); *Jones v. Kelley*, 614 S.W.2d 95, 98-99 (Tex. 1981) (same).

Taking the Doctors' allegations in their complaint at face value, the Non-Signatory TUFTA Defendants fit into the contract's definition of "affiliates." As admitted by the Doctors themselves: "Upon information and belief, Mr. Feldman and/or Mrs. Matz, either jointly or separately, ultimately own and exercise control over all business entities named as Defendants." ROA.64 ¶ 213. This allegation puts all "business entities

46

named as Defendants" in this suit under the broad definition of "affiliates," thereby subjecting the claims raised by the Doctors here to the arbitration agreement and the Delegation Clause.[8] *See Green v. Serv. Corp. Int'l*, 333 F. App'x 9, 11 & n.1 (5th Cir. 2009). In other words, the Court should conclude that the Doctors (and their "affiliates") formed an arbitration agreement to arbitrate any kind of dispute with all these TUFTA Defendants, being "affiliates"—that is, the Non-Signatory TUFTA Defendants. *See id.* The FAA imposes no requirement that a party sign an arbitration agreement to make that provision binding. *See Rodgers-Glass v. Conroe Hosp. Corp.*, No. H-14-cv-3300, 2015 WL 4190598, at *3 (S.D. Tex. July 10, 2015).

In determining whether the Doctors agreed to arbitrate "any and all controversies, disputes or claims" against the Law Firm's "affiliates," the Court should avoid "reach[ing] a result inconsistent with the plain text of the contract." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Given "the contractual nature of arbitration," the Doctors "may specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen*

---

[8] The district court previously applied this definition of "affiliates" to the Doctors' entities in compelling them to arbitration. *Sullivan v. Feldman*, No. 4:20-cv-02236, 2020 WL 4734982, at *5-7 (S.D. Tex. Aug. 14, 2020).

*S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (emphasis in original). "[O]rdinary state-law principles that govern the formation of contracts" dictate this interpretive rule. *First Options*, 514 U.S. at 944). Texas substantive law, which applies in this diversity case, bars the Court from disregarding the contractual definition of "affiliates" and substituting some other meaning for it. *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 64 (Tex. 2014).

Even though Stewart Feldman, as Trustee of the 1998 Irrevocable Family Trust and as Trustee of the Benjamin and Sylvia Feldman Grandchildren's Trust; MNS Investments, Limited Partnership; MNS Management Corp.; Mesquite Holdings, LLC; 2705 Vermont Associates, LLC; and Beringhouse Holdings, LLC never signed the Joint Engagement Letter or Reinsurance Agreements, these Defendants still qualify as the Law Firm's "affiliates" under the contract's arbitration agreement. *See* ROA.674-79. As "affiliates," these non-signatories can compel the Doctors to arbitrate. *See Green*, 333 F. App'x at 11 & n.1.

***Third***, even without relying on the contractual term "affiliates," the Non-Signatory TUFTA Defendants can still compel the signatory Doctors to arbitrate arbitrable disputes—like the gateway issue of

48

arbitrability—using the doctrine of equitable estoppel.[9] *See Sain v. TransCanada USA Servs., Inc.*, Case No. H-22-cv-2921, 2023 WL 417476, at \*7 (S.D. Tex. Jan. 25, 2023) (Rosenthal, C.J.).

"[A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (omitting citations). "Whether a nonsignatory to an arbitration agreement may invoke that agreement is a question for the court, even when the parties' agreement provides that an arbitrator will determine arbitrability." *Id.*

Mirroring the allegations the plaintiff made against the non-signatory TransCanada in *Sain*, the Doctors "treat the defendants as an indistinguishable unit, demonstrating the tight relatedness of the parties, contracts, and controversies." *Id.* (omitting citations). A case in point comes from the Doctors' attempt to classify all the Defendants as

---

[9]    Although this Court would review a district court's decision regarding equitable estoppel for an abuse of discretion, the district court here did not make any decision regarding equitable estoppel. *See Cure*, 118 F.4th at 668.

alter egos, *see* ROA.28-29, 64-66, or as *all* subject to the control of "Mr. Feldman and/or Mrs. Matz," ROA.64.

Indeed, the Doctors allege this "interdependent" conduct themselves: "The Doctors seek legal and equitable relief to unravel the Feldman Debtors' asset-protection schemes ***that have interfered with*** the Doctors' collection and enforcement rights as judgment creditors." ROA.15 (emphasis added). Under the equitable estoppel doctrine, the Non-Signatory TUFTA Defendants can thus compel the signatory Doctors to arbitrate. *Id.*

## CONCLUSION

The decision of the district court denying the motion to compel arbitration should be reversed because the district court erred in deciding the threshold question of arbitrability by holding that the parties' dispute fell outside their arbitration agreements.

/s/ *Raffi Melkonian*
Raffi Melkonian
A. Rose Doda
WRIGHT CLOSE BARGER & GUZMAN, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Facsimile)

melkonian@wrightclosebarger.com
doda@wrightclosebarger.com

/s/ *Jeff Joyce*
Jeff Joyce
JOYCE LAW FIRM PLLC
802 Country Ln
Houston, TX 77024
(713) 222-1113
(713) 899-2397 (Facsimile)
Jjoyce@JoyceLawTx.com

(*Counsel for Stewart A. Feldman, The Feldman Law Firm LLP, Stewart A. Feldman as trustee of the 1998 Irrevocable Family Trust, Stewart A. Feldman as trustee of the Benjamin and Sylvia Feldman Grandchildren's Trust, and Beringhouse Holdings, LLC*)

/s/ *E. John Gorman*
E. John Gorman
Joseph F. Greenberg
THE FELDMAN LAW FIRM LLP
510 Bering Dr., Suite 500
Houston, TX 77057-1457
(713) 850-0700
(713) 850-8530 (Facsimile)
jgorman@feldlaw.com
jgreenberg@feldlaw.com

(*Counsel for Stewart A. Feldman, The Feldman Law Firm LLP*)

/s/ *Kevin R. Pennell*
Kevin R. Pennell
PENNELL LAW FIRM PLLC
19 Briar Hollow Lane
Suite 110
Houston, TX 77027
(713) 965-7568
(713) 583-9455 (fax)
kevin@pennellfirm.com

*(Counsel for Marla B. Matz, Capstone Associated Services, Ltd., Capstone Associated Services (Wyoming), Limited Partnership (incorrectly named as Capstone Associated (Wyoming), Limited Partnership and Capstone Holdings (Wyoming), Limited Partnership), Capstone Insurance Management, Ltd., Capstone Associated Services (Wyoming), LLC (incorrectly named as Capstone Holdings (Wyoming), LLC) A.M.Y. Property & Casualty Insurance Corp. (incorrectly named as A.M.Y. Property & Casualty Corp.), A.M.Y. Operating Co., LLC, MNS Investments, Limited Partnership, MNS Management Corp., RSL Funding, LLC, RSL-3B-IL, Limited Partnership, RSL Special-IV, Limited Partnership, RSL-5B-IL, Limited Partnership, POC Lease Holdings, LLC, Extended Holdings, Limited Partnership, RSL 2012-1, LP, RSL-3B-IL Management, LLC, Chestnut Holdings, LLC, Mesquite Holdings, LLC, Property Express Funding, Ltd., PEF Management Corp., RSL 2012-1 Management LLC,*

*RSL-5B-IL Management, LLC, Extended Management, LLC, RSL Special Management Corp. (incorrectly named as RSL Special-IV Management Corp.), 2075 Vermont Associates, LLC, and Capstone Holdings, LLC)*

# CERTIFICATE OF SERVICE

I hereby certify that October 3, 2025, I electronically transmitted the attached Appellees' Brief to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF System, which sent a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Raffi Melkonian*
Raffi Melkonian

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 10,520 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font for text and Century Schoolbook 12-point font for footnotes.

*/s/ Raffi Melkonian*
Raffi Melkonian